## IN THE UNITED STATES DISTRICT COURT OF KANSAS

MARK A. BRUCE,

      Plaintiff,

v.

ALAN D. CONROY,
In His Official Capacity,

      Defendant,

Case No._____

## COMPLAINT

The plaintiff, Mark A. Bruce, states and alleges the following claim for relief against the defendant, Alan D. Conroy.

### JURISDICTION AND VENUE

1.  This is a civil rights case based upon and arising under 42 U.S.C § 1983 and the Fourteenth Amendment to the United States Constitution.

2.  This court has subject matter jurisdiction over the plaintiff's claim for relief pursuant to 42 U.S.C. § 1331, since this claim arises under federal statutory law.

3.  All the wrongful acts and practices alleged below were committed within the State of Kansas, and venue is proper in this court pursuant to 28 U.S.C. § 1391 (b) – (c).

### PARTIES

4.  The plaintiff, Mark A. Bruce, is the former Superintendent of the Kansas Highway Patrol ("KHP").

5.  The defendant, Alan D. Conroy, is the Executive Director of Kansas Public Employees Retirement System ("KPERS"). KPERS is an agency of the State of Kansas,

and it provides retirement benefits for public employees in Kansas. Mr. Conroy is only being sued in his official capacity.

## FACTUAL ALLEGATIONS

6.    In 1989, Mr. Bruce was hired to work for the KHP. At that point in time, he became a member of the Kansas Police and Fireman's Retirement System, which is part of KPERS.

7.    Over the course of his career, Mr. Bruce moved up the KHP's ladder, and in 2008, he became a Major. He served his probationary period as a Major, and then achieved permanent status as a classified employee under the Kansas Civil Service Act. K.S.A 75-2925 et seq. As a classified employee, Mr. Bruce could only be dismissed, demoted, or suspended for valid cause after various procedural and substantive safeguards had been followed.

8.    In 2015, Mr. Bruce was appointed as the Superintendent of the KHP by then-Governor Sam Brownback. The Superintendent position is unclassified under the Kansas Civil Service Act. This means that the KHP Superintendent serves at the pleasure of the Governor, in an at-will position.

9.    Mr. Bruce understood that he would remain employed as the Superintendent for as long as the Governor wanted him to serve as Superintendent. In contrast, the position of Major - - which Mr. Bruce held before he became Superintendent - - is a classified position under the Kansas Civil Service Act. Procedural due process protections apply to KHP Majors. If the Governor decided not to retain Mr. Bruce as Superintendent, he understood that he would return to the position of Major within the classified service, as required by K.S.A. 74-2113 (a).

10.    Governor Laura Kelly won the 2018 gubernatorial election.  Mr. Bruce met with Governor Kelly and her Chief of Staff, Will Lawrence, near the end of 2018. After the meeting, Governor Kelly asked Mr. Bruce to remain as Superintendent for four more years. However, in March of 2019, Governor Kelly decided to change the KHP's leadership, and she tasked Mr. Lawrence with effectuating this change.

11.    On March 28, 2019, Mr. Bruce went to Mr. Lawrence's office for a meeting. Once Mr. Bruce sat down, Mr. Lawrence said, "We need you to resign." Mr. Bruce was shocked. He then discussed various management issues with Mr. Lawrence, but they never discussed the benefits of retirement versus demotion to Major.

12.    During the meeting on March 28, 2019, Mr.  Lawrence presented a letter of resignation to Mr. Bruce, stating: "This letter is to advise you that I hereby resign my position as Superintendent of the Kansas Highway Patrol, effective April 6, 2019." Mr. Bruce signed the resignation letter because he didn't feel like he had any choice. He didn't think he had the option to take time to think about his decision, nor did Mr. Lawrence offer him any time to think about it.

13.    On April 8, 2019, KPERS received Mr. Bruce's Application for Retirement Benefits. The application indicated a retirement date of May 1, 2019. Mr. Bruce selected the 50% joint-survivor annuity option.

14.    Mr. Bruce's monthly retirement benefits were calculated using 32 years of service and a final average salary of $122,420.97. Each month, beginning in May 2019, Mr. Bruce has received a retirement benefit of $7,581.94.

15.    In 2020, Mr. Bruce filed a lawsuit in the United States District Court of Kansas against Governor Kelly,  in her official capacity, pursuant to 42 U.S.C. § 1983.

This case was docketed as Case No. 20-4077-DDC. In this lawsuit, Mr. Bruce contended that Governor Kelly violated his constitutional due process rights when, through Mr. Lawrence, she coerced Mr. Bruce to resign and failed to return him to his former rank of Major, as Kansas law required. KPERS was not a party to this lawsuit.

16. On July 12, 2024, this court rendered a final decision in Mr. Bruce's lawsuit against Governor Kelly, concluding:

> … Governor Kelly constructively discharged plaintiff from his position as Superintendent. When the Governor terminates the KHP Superintendent, Kansas Law provided that the Superintendent 'shall be returned to a rank not lower than the rank the person held when appointed as superintendent[.]' Kan. Stat. Ann. § 74-2113(a). This entitled plaintiff to return to Major. But he never did. Instead, Governor Kelly terminated plaintiff from all employment with KHP without due process. And thus plaintiff prevails on his § 1983 procedural due process claim.

Case No. 20-4077-DDC, doc. #101 at pp. 15-16.

17. This court then addressed the question of the appropriate remedy for the violation of Mr. Bruce's constitutional rights of due process. In addressing this question, this court first explained:

> A 'suit against a state official in his or her capacity is not a suit against the official but rather a suit against the official's office. As such, it is no different from a suit against the State itself.' States of course, 'are protected by the Eleventh Amendment.' So, defendants are entitled to Eleventh Amendment immunity from suit for damages.

Case No. 20-4077-DDC, doc. # 101 at pp. 15 -16.

18. This court next observed that there is a narrow exception to this total immunity for state officials, which was created in Ex parte Young, 209 U.S. 123 (1908). Under this exception, "the Eleventh Amendment does not prevent Federal courts from

granting prospective injunctive relief to prevent a continuing violation of federal law." Case No. 20-4077-DDC, doc. #101 at p. 17.

19. Applying Ex parte Young to Mr. Bruce's lawsuit, this court concluded that reinstatement of employment is a form of prospective injunctive relief. Consequently, this court ordered Governor Kelly "to reinstate plaintiff to employment with the KHP at the rank of Major with permanent status in the classified service at the step he previously occupied and pay grade 42." Case No. 20-4077-DDC, doc #101 at p. 17.

20. However, this court further concluded that the enhancement of Mr. Bruce's retirement benefits was not a proper form of prospective injunctive relief, explaining:

> Here, plaintiff testified that he currently receives retirement benefits at 80% of his final average salary -- 32 years of creditable service multiplied by the 2.5% multiplier. Now, plaintiff wants his current retirement benefits increased to 90% of his final average salary -- an increase based on the four years since defendants unlawfully terminated his employment in 2019. The court rejects this remedy because the Eleventh Amendment bars it.

Case No. 20-4077-DDC, doc. # 101 at p.20

21. On July 16, 2024, Mr. Bruce was reinstated to employment with the KHP at the rank of Major with an annual salary of $111,259.20. He was immediately placed on administrative leave.

22. In the fall of 2024, Mr. Bruce requested KPERS to recalculate his retirement benefits, based on this court's finding that Governor Kelly had unconstitutionally coerced him into resigning from his employment with the KHP. Specifically, Mr. Bruce again requested that his current retirement benefits be increased retroactively to 90% of his final average salary (the statutory maximum). This request was based on the four-plus

years, from May of 2019 to July of 2024, when Mr. Bruce was unconstitutionally deprived of his employment with the KHP.

23.    Mr. Bruce's request to KPERS to recalculate his retirement benefits was eventually assigned to an ALJ to render an initial order. On December 5, 2025, the ALJ rendered an initial order which denied Mr. Bruce's request, stating:

> Put simply, there is no legal authority to grant the request. KPERS noted Bruce's request was specifically addressed, analyzed, and denied by the U.S. District Court, thereby making it clear that there is no judicial, statutory, or constitutional authority to grant Bruce's request for increased retirement benefits.

24.    On January 16, 2026, the KPERS Board of Trustees entered a final order, adopting in full the initial order of the ALJ.

## COUNT I: VIOLATION OF MR. BRUCE'S CONSTITUTIONAL RIGHTS OF DUE PROCESS

25.    Paragraph 1-24 above are incorporated into Count I by reference.

26.    The Fourteenth Amendment to the United State Constitution and 42 U.S.C. § 1983 prohibit the State of Kansas and its employees from depriving Mr. Bruce of a property interest without due process.

27.    Under Kansas law, Mr. Bruce has a constitutionally protected property interest in his retirement benefits which are provided by KPERS. Munck v. Kansas Public Employee Retirement System, 35 Kan. App. 2d 311, 322-24, 130 P. 3d 117 (2006).

28.    The Kansas Legislature has waived all sovereign immunity for KPERS, and this waiver of sovereign immunity extends to every aspect of KPERS' contractual liability. Shapiro v. Kansas Public Emp. Retirement System, 216 Kan. 353, Syl. ¶¶ 1-2, 532 P. 2d 1081 (1975).

29.    Mr. Conroy, acting under color of state law, deprived Mr. Bruce of a property interest without due process, when Mr. Bruce's request to recalculate his retirement benefits was denied. As set forth above, Mr. Bruce's request to recalculate his retirement benefits was based on the four-plus years, from May of 2019 to July of 2024, when Mr. Bruce was unconstitutionally deprived of his employment with KHP.

Wherefore, Mr. Bruce prays for declaratory and injunctive relief against Mr. Conroy, in his official capacity, enjoining him to retroactively increase Mr. Bruces's retirement benefits to 90% of his final average salary. In addition, Mr. Bruce further prays for an award of prejudgment interest and reasonable attorney fees, pursuant to 43 U.S.C. § 1988.

Respectfully submitted:

SLOAN, EISENBARTH, GLASSMAN,
  MCENTIRE & JARBOE, L.L.C.
534 S. Kansas Ave., Suite 1000
Topeka, KS 66603-3456
Office: (785) 357-6311
Fax:    (785) 357-0152

/s/ Alan V. Johnson
Alan V. Johnson, KS #09992
ajohnson@sloanlawfirm.com
**ATTORNEYS FOR PETITIONER**

**DESIGNATION OF PLACE OF TRIAL**

Plaintiff requests that Topeka, Kansas, be designated as the place of trial in this case.

Respectfully submitted:

SLOAN, EISENBARTH, GLASSMAN,
  MCENTIRE & JARBOE, L.L.C.
534 S. Kansas Ave., Suite 1000
Topeka, KS 66603-3456
Office: (785) 357-6311
Fax:    (785) 357-0152

/s/ Alan V. Johnson
Alan V. Johnson, KS #09992
ajohnson@sloanlawfirm.com
**ATTORNEYS FOR PETITIONER**